## Salem

### HERBERT G. LANIER

v.

### COMMONWEALTH OF VIRGINIA

No. 1025-88-3

Decided July 3, 1990

COUNSEL

David W. Shreve (Shreve & Berger, on brief), for appellant.

David A. Rosenberg, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.**—Herbert Garland Lanier was convicted in a bench trial of possession of marijuana with the intent to distribute. He raises three issues on appeal: (1) whether the search warrant was issued without probable cause; (2) whether the identity of the informant who provided the basic information for the warrant affidavit was improperly withheld; and (3) whether statements made by Lanier during and after the search were made in violation of his fifth amendment rights. For the reasons set forth below, we affirm Lanier's conviction.

On March 11, 1987, a search warrant was issued for the residence of Herbert Lanier based on an affidavit provided by Officer Brown.[1] A week earlier, a similar warrant was obtained for the search of a trailer occupied by James Shaw.[2] Officer Brown relied

---

[1] The relevant parts of the affidavit are as follows:

A reliable and confidential informant told me he was present [at the Lanier residence] within the past 48 hours and personally observed marijuana in the premises. Informant is a self-admitted marijuana user and is familiar with the appearance of marijuana. These facts were given to affiant on March 11,1987. Informant told me that he has previously, during March 1987, observed scales in Lanier's home.

Informant has been known by affiant in excess of 15 years. Informant has always been totally honest and reliable in his dealing with affiant. Informant has provided information to affiant, which has led to convictions of others in criminal cases. Informant has also given information to affiant concerning drug cases which has led to convictions. Affiant has personally verified that all such previous information provided by informant is accurate.

[2] The facts set forth as constituting probable cause were the same as in the Lanier affidavit with the following exceptions: 1) marijuana was seen by the informant in the Shaw residence; 2) the information was provided to Officer Brown on March 5, 1987; and 3) there was no mention of scales in the Shaw residence. The statement pertaining to the informant's reliability/credibility was the same.

on the same informant for the information provided in both affidavits.

At approximately 5:50 p.m. on March 11, Deputy Conner and Investigator Taylor of the Pittsylvania County Sheriff's office pulled into Lanier's driveway in a marked police vehicle and sounded the horn. Lanier went out to the car. Conner told Lanier that they needed to talk to him and instructed him to sit in the back of the car. When Lanier did so, the door was closed behind him. A wire cage separated the front and back seats and the doors had no handles on the inside. Lanier knew that Conner was a deputy sheriff, although Conner was not wearing his uniform.

Conner introduced Taylor to Lanier and told Lanier that they had a search warrant for his home. Taylor asked Lanier if anyone else was inside and if there were drugs in the home. When Lanier responded that his wife and son were inside and that there were a couple of pounds of "pot" in the basement, Taylor stopped him and advised him of his fifth amendment rights. Five or six additional police vehicles arrived as they were speaking. The officers and Lanier then got out of their vehicle. Taylor again advised Lanier of his rights, this time from a written form, which Lanier signed.

Lanier was taken into the kitchen while the officers searched his home. He was extremely upset and nervous. During the search, Lanier spoke to Special Agent Gibson about the need to provide care for his son if his wife were to be arrested as a result of the search.[3] After this discussion, Lanier's wife told him he did not have to speak with the police before speaking with an attorney, and calmed him down somewhat.

Lanier was placed under arrest at approximately 8:30 p.m. Investigator Simpson advised him of his rights at that time and told him he would be transported to the Sheriff's office, where a magistrate would determine whether he would be put in jail. Lanier did not request an attorney. While in the car, he asked what would happen to him. Investigator Simpson informed Lanier of the serious nature of the charges he was facing and the possibility of a

---

[3] Both Lanier and his wife, Maryann, testified that Special Agent Gibson threatened to have Maryann arrested and their child taken by Social Services if Lanier did not cooperate with the police.

long prison sentence. Simpson also told him that he had information that Lanier was dealing a large quantity of drugs from his home. Simpson then advised Lanier that if Lanier wanted to work with the police, Simpson would speak to the Commonwealth's Attorney. Lanier replied by stating that he had "slacked off" for the last six months, was not doing drugs like before, and was trying to get things straightened out. He also indicated that the drugs were his and that his wife was not involved.

On appeal, Lanier argues that the evidence obtained pursuant to the search of his home should have been suppressed because the information contained in the affidavit supporting the warrant was false. He argues that the officer either lied as to the existence of the informant, or that the officer knowingly, or with reckless disregard for the truth, included information in the affidavit which was false and omitted material information as to the reliability of the informant. Thus, he asserts there was insufficient probable cause to sustain the issuance of the warrant and the evidence seized pursuant to it was improperly admitted into evidence. Lanier argues in the alternative that, if the informant did exist, the court erred in not requiring the Commonwealth to disclose the informant's identity when such disclosure would have been both relevant and helpful to his defense. Finally, Lanier argues that the statements he made to the police when they first arrived at his home and after he had been arrested, should have been suppressed because they were made while he was in custody and without a voluntary waiver of his fifth amendment rights.

In response, the Commonwealth argues that Lanier failed to show that the officer knew: (1) that any of the statements he made in the affidavit were false; or (2) that his informant was lying. Therefore, the Commonwealth contends that the affidavit provided sufficient probable cause to support issuance of the warrant and the evidence obtained as a result of its execution was properly admitted at trial. In addition, the Commonwealth argues that Lanier had no right to disclosure of the informant's identity, either at the suppression hearing or at trial. Finally, the Commonwealth maintains that Lanier's statements were properly admitted because he was not in custody when he first spoke with the officers and therefore was not entitled at that time to *Miranda* warnings. The Commonwealth asserts that the later statements were admissible because Lanier made the statements voluntarily after he had been

advised of his fifth amendment rights.

We find that the warrant was supported by probable cause and, therefore, the trial court did not err in denying Lanier's motion to suppress the evidence seized from his residence. In addition, we find that the court did not err in denying Lanier's motions for disclosure of the informant's identity. Finally, we find that the statements made by Lanier to the officers during the search of his residence were made voluntarily and not obtained in violation of his fifth amendment rights. Accordingly, we affirm the conviction.

■ In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision, whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also Garza v. Commonwealth*, 228 Va. 559, 563, 323 S.E.2d 127, 129 (1984). The duty of a reviewing court, on the other hand, is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)); *Garza*, 228 Va. at 563, 323 S.E.2d at 129; *see also Williams v. Commonwealth*, 4 Va. App. 53, 68, 354 S.E.2d 79, 87 (1987). Thus, the magistrate's determination of probable cause should be afforded great deference on appellate review. *Williams*, 4 Va. App. at 68, 354 S.E.2d at 87. Moreover, even if the warrant was not issued upon probable cause, evidence seized pursuant to the warrant is nevertheless admissible if the officer executing the warrant reasonably believed that the warrant was valid. *United States v. Leon*, 468 U.S. 897, 918-21 (1984); *see McCary v. Commonwealth*, 228 Va. 219, 232, 321 S.E.2d 637, 644 (1984).

■ In *Leon*, the court acknowledged that suppression "remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." 468 U.S. at 923. An accused may challenge the veracity of the affiant in accordance with the procedure established in *Franks v. Delaware*, 438 U.S. 154 (1978):

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155-56.

■ The court defined "truthful" for *Franks* purposes as follows:

This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

*Id.* at 165. The *Franks* standard of deliberate falsity or reckless disregard applies only to those statements made by the affiant, not a nongovernmental informant. *Id.* at 171.

Lanier argues that he established by a preponderance of the evidence that there was no informant in his home within the forty-eight hour period immediately preceding the search. He asserts there either was no informant or that the informant lied about his presence in the Lanier residence. Consequently, Lanier contends that the information relied upon by the magistrate to determine probable cause was false. Moreover, he asserts that the officer knew the information was false because similar information provided by the same informant one week earlier had proven to be false. Since the informant's observations provided the entire basis for probable cause supporting issuance of the warrant, Lanier con-

tends that once this information is removed from the affidavit, no basis exists for the issuance of the warrant. Thus, he concludes that the warrant must be voided and the fruits of the search excluded from evidence.

On appeal, we must review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987) (citing Code §8.01-680). Lanier presented considerable evidence in an attempt to show that there was no informant on his premises or the premises of James Shaw within the forty-eight hour period prior to the respective searches. However, there was no direct evidence that Officer Brown included knowingly false statements or statements made with reckless disregard for the truth in either of the affidavits for search warrant.[4] In addition, Brown stated that he had no reason to believe that the information provided by the informant with respect to the earlier search of the Shaw residence was false as Lanier contends. The officer testified that marijuana was found at the Shaw residence, as the informant had indicated, although not in the quantity described by the informant. The officer did not know whether the quantity of marijuana reportedly seen by the informant was disposed of prior to execution of the warrant.

The trial court denied Lanier's motion to suppress. Implicit in this ruling is a finding that Lanier did not establish by a preponderance of the evidence his allegations of perjury or reckless disregard for truth on the part of Officer Brown. The finding of the trial judge as to the credibility of witnesses and the weight to be given their testimony stands on the same footing as the verdict of a jury, and will not be disturbed unless it is plainly wrong or without evidence to support it. *Yates v. Commonwealth*, 4 Va. App. 140, 143, 355 S.E.2d 14, 16 (1987). On the record before us, we find that the trial court's conclusions as to the existence of the informant or the truthfulness of Officer Brown's assertions in the

---

[4] The affidavit of Mrs. Roach, which was submitted to the court in support of Lanier's request for a *Franks* hearing, claimed that Officer Brown told her that he had received information from the informant which led him to believe that Shaw would be at home when the warrant was executed. When he entered Shaw's residence and was informed that Shaw was in Covington, he realized immediately that he had been given wrong information. At the suppression hearing, however, Mrs. Roach did not make a similar claim.

affidavit are not plainly wrong or without evidence to support them.

Lanier also argues that the affidavit did not meet the *Gates* probable cause standard. The warrant was based entirely on information provided by an informant, without corroboration. The affiant stated, however, that he had known the informant for fifteen years, and that the informant had in the past provided information which led to convictions, including convictions in drug cases. Based on this information, the magistrate was entitled to conclude that the informant was reliable. *See Manley v. Commonwealth*, 211 Va. 146, 150, 176 S.E.2d 309, 313 (1970), *cert. denied*, 403 U.S. 936 (1971). ("The most commonly accepted and approved allegation to substantiate reliability is that the informer is a person of known and proven reliability and has furnished information to law enforcement officers which has been instrumental in procuring convictions"). In addition, the informant, who was described in the affidavit as a "self-admitted marijuana user," was alleged to have personally observed marijuana in Lanier's residence within the forty-eight hour period prior to the issuance of the search warrant. This information provided a substantial basis for the magistrate to conclude that probable cause existed. *See Wheeler v. Commonwealth*, 217 Va. 95, 98, 225 S.E.2d 400, 403 (1976) (affidavit based upon personal observations of a reliable informant, which included statements from which the magistrate could conclude that the informant was familiar with drugs and could recognize LSD, is sufficient to establish probable cause for warrant).[5] Thus, the evidence obtained as a result of the search of Lanier's residence was admissible at trial.

Lanier also contends that the trial court erred in denying his motion for disclosure of the identity of the informant at the suppression hearing and at trial. In denying Lanier's motion, the trial court afforded to the Commonwealth the testimonial privilege commonly referred to as the informer's privilege. *See Roviaro v. United States*, 353 U.S. 53 (1957). This privilege was recognized as early as 1884 as a public policy right which protected the identity of persons who furnish information relating to violations of the law from disclosure absent government consent to such disclosure. *See Vogel v. Gruaz*, 110 U.S. 311, 315-16 (1884); *see also*

---

[5] Both *Manley* and *Wheeler* were decided under the two-prong *Aguillar-Spinelli* standard for probable cause, which was later rejected by *Gates* and replaced with the less restrictive totality of the circumstances approach.

*In re Quarles*, 158 U.S. 532, 535-36 (1895).

In *Roviaro*, the Supreme Court, exercising its supervisory power, held that the decision whether to disclose the identity of an informant in a federal criminal trial depends upon whether disclosure is relevant and helpful to the defense of the accused. 353 U.S. at 61; *see also United States v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985). However, the Court promulgated no fixed rule with respect to when disclosure is required.

> The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Roviaro*, 353 U.S. at 62.

In *McCray v. Illinois*, 386 U.S. 300 (1967), the Supreme Court reiterated its unwillingness to draw any hard and fast rule requiring disclosure.

> What *Roviaro* thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court ever approached a formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake. Indeed, we have repeatedly made clear that federal officers need *not* disclose an informant's identity in applying for an arrest or search warrant.

*Id.* at 311 (emphasis in original). Moreover, *McCray* held that a state is not barred by either the sixth amendment or the fourteenth amendment from establishing a testimonial privilege for informants. Thus, the Court upheld a practice adopted by the Illinois courts where disclosure of an informant's identity is not required if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers re-

lied in good faith upon credible information supplied by a reliable informant. *Id.* at 312. In *Cooper v. California*, 386 U.S. 58 (1967), the Court again dismissed as meritless an argument that failure to disclose the identity of an informant violated an accused's sixth amendment right to confrontation. *Id.* at 62 n.2.

 No fixed rule has yet been adopted in Virginia with respect to disclosure by the government of an informant's identity. We hold that the appropriate test for determining whether the trial court's refusal to order disclosure of the identity of an informant in a criminal trial constitutes reversible error is the balancing test set forth in *Roviaro*. Thus, on appeal, the question to be resolved is whether the trial court abused its discretion by refusing to order disclosure of the informant's identity either at a suppression hearing or at trial.

In the case before us, we find that the trial court did not abuse its discretion in denying Lanier's motion to have the informant's identity disclosed at the suppression hearing. Lanier's home was searched pursuant to a warrant which had been issued by a magistrate. Prior to issuing the warrant, the magistrate made a probable cause determination based on the affidavit for search warrant filed by Officer Brown. The affidavit contained the information provided to Officer Brown by the informant and the basis for the informant's knowledge. In addition, Brown described his relationship with the informant in detail, and his reasons for believing that this informant was credible. Lanier's counsel examined Brown at the preliminary hearing with respect to the information provided by the informant and the transcript of the preliminary hearing was made part of the record during the hearing on the suppression motion. Although counsel did not examine Brown during the suppression hearing as to either the information provided by the informant or the informant's reliability, Brown was available to counsel for such examination. On this record, we find that the court did not abuse its discretion in determining that disclosure was not required for purposes of the suppression hearing.

Likewise, the trial court did not abuse its discretion by refusing to require disclosure of the informant's identity at trial. One of the most important factors for the court to consider in deciding whether disclosure is required is the materiality of the evidence to the defendant's case. *See Smith*, 780 F.2d at 1108. The defendant must come forward with something more than speculation as to

the usefulness of the identity of the informer. *Id.* In this case, Lanier argues that the informant may have produced evidence as to the defenses of entrapment or accommodation. In this case however, unlike *Roviaro*, there was no evidence that the informant had participated in the crime charged.

Lanier also argues that the informant might have provided exculpatory evidence and that he had no means of discovering what the informant knew unless the informant's identity was disclosed. In *Smith*, the Fourth Circuit stated that "[d]isclosure is not required despite the fact that a criminal defendant may have no other means of determining what relevant information the informant possesses." *Smith*, 780 F.2d at 1108. In this case, the Commonwealth was under an obligation to provide to Lanier all exculpatory evidence, *see Brady v. Maryland*, 373 U.S. 83, 87 (1963), including exculpatory evidence provided by the informant. Thus, disclosure of the identity of the informant was not necessary for this purpose.

We hold that this case is distinguishable from *Roviaro*, where the Supreme Court determined that disclosure was necessary because the informant had taken a material part in the illegal activity. In *Roviaro*, the informant and the defendant were the sole participants in the transaction, the informant had helped set up the transaction and played a prominent part in it, and the informant was the only witness in a position to amplify or contradict the testimony of the other government witnesses. No similar facts were before the trial court here. In this case, Lanier contends only that Officer Brown alleged that the informant had been in Lanier's house and observed marijuana there. Lanier disputes that assertion and presented affidavits and testimony of numerous witnesses who were at his home during the same period and could testify as to the presence or absence of marijuana in Lanier's home. But Lanier was not charged with possession of marijuana at some earlier point in time; he was charged with possession based upon what was found at the time his home was searched. Based on these facts, we hold that the trial court did not abuse its discretion by denying Lanier's motion to compel disclosure of the identity of the informant at trial.

Finally, Lanier argues that the court erred in admitting into evidence two statements made by him. The first statement was made by Lanier shortly after the first police car arrived at his

home. Lanier was seated in the back of the car and responded to a question posed by Investigator Taylor as to whether there was anyone else inside and whether there were drugs in the home. He had been told by the officers that they possessed a search warrant for his home, but he had not been informed of his *Miranda* rights. His second statement was made several hours later, after he had been arrested and advised of his rights.

The trial court concluded that, because Lanier was not in custody when he made his initial statement to Deputy Conner and Investigator Taylor, *Miranda* warnings were not required. We agree.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court mandated that a defendant be informed of his constitutional rights before custodial interrogation begins. The Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444; *see also Wass v. Commonwealth*, 5 Va. App. 27, 30, 359 S.E.2d 836, 837 (1987); *May v. Commonwealth*, 3 Va. App. 348, 352, 349 S.E.2d 428, 430 (1986).

In determining whether Lanier was in custody, the totality of the circumstances must be evaluated from the standpoint of a reasonable man in Lanier's position. *See Wass,* 5 Va. App. at 32, 359 S.E.2d at 839. Factors which must be considered include "whether a suspect is questioned in familiar or neutral surroundings, the number of officers present, the degree of physical restraint, and the duration and character of the interrogation." *Id.* at 32-33, 359 S.E.2d at 839. The language used by the officer to summon the individual and the extent to which he is confronted with evidence of guilt may also be significant factors. *Id.* at 33, 359 S.E.2d at 839.

In the case before us, it is evident from the record that when Deputy Conner signalled Lanier with his horn, Lanier voluntarily came from his house to the police car located in his driveway. Conner told Lanier that they needed to talk to him and to sit in the back of the vehicle. Lanier entered the vehicle and the door was closed behind him. Conner and Taylor were the only two officers present at that time, although five or six other vehicles con-

verged on Lanier's home shortly thereafter. Lanier knew Conner, who introduced him to Investigator Taylor. The parties' exchange in the vehicle prior to advising Lanier of his *Miranda* rights was brief. Taylor informed Lanier that they had a warrant and asked if there were drugs in the house. Lanier responded affirmatively.

While it is undisputed that the vehicle was a marked police vehicle which had no handles in the back seat, that fact alone is not sufficient, in view of the totality of the circumstances, to make this exchange a "custodial interrogation" requiring *Miranda* warnings. The principal issue we must consider when determining whether *Miranda* warnings are necessary is the custodial nature of the interrogation, not the location of the interrogation. *See Coleman v. Commonwealth*, 226 Va. 31, 46-47, 307 S.E.2d 864, 872-73 (1983), *cert. denied*, 465 U.S. 1109 (1984) (statements made by defendant in police vehicle admissible although *Miranda* warnings were not given); *see also United States v. Manbeck*, 744 F.2d 360, 379 (4th Cir. 1984), *cert. denied*, 469 U.S. 1217 (1985) (defendant not in custody although placed in police vehicle and asked to keep his hands in clear view while the officers talked with him).

We find that the following evidence in the record supports the trial court's finding that a reasonable man in Lanier's position would not have believed that his freedom of movement had been curtailed to the degree associated with a formal arrest, *see California v. Beheler*, 463 U.S. 1121, 1125 (1983) (ultimate inquiry is whether there is formal arrest or restraint on freedom of movement of the degree associated with formal arrest), even though the statements were made while Lanier was seated in Deputy Conner's vehicle: (1) the vehicle was in Lanier's own driveway and he entered it of his own accord; (2) he knew Deputy Conner; (3) there were only two officers present and the exchange was brief; and (4) Lanier was at no time told by the officers that he could not leave. Therefore we hold that the trial court did not err in admitting the first statement.

The second statement objected to by Lanier was made after he had been advised of his *Miranda* rights. The relevant inquiry, therefore, is whether this statement was made voluntarily. *Goodwin v. Commonwealth*, 3 Va. App. 249, 252, 349 S.E.2d 161, 163 (1986)(prosecution must show that the defendant made a voluntary, knowing and intelligent waiver of his constitutional privileges against self-incrimination and right to counsel). "[T]he

issue of voluntariness. . . . is a legal question requiring independent review by an appellate court, based upon the entire record." *Goodwin*, 3 Va. App. at 253, 349 S.E.2d at 163.

The record shows that Lanier was advised of his rights at least three times prior to making the statements in question, including immediately prior to being transported to the sheriff's office. The testimony also established that Lanier was upset while his house was searched. However, the record also indicates that Lanier had calmed down somewhat by the time he was placed in the police car for transport.

Investigator Simpson testified that as soon as they got in the car, Lanier began asking what was going to happen to him. The officers told him that he faced a long prison sentence but did not tell him he was going to jail at that time. Rather, Investigator Simpson told him that a magistrate would be called to decide whether he would go to jail. Both officers testified that no promises of leniency were made to Lanier while they rode in the car, although they did tell Lanier that if he cooperated they would try to work something out with the Commonwealth Attorney.

Investigator Simpson testified that the only reference pertaining to Lanier's wife and child made in his presence was made by Lanier himself when he said that the drugs were his and that his wife was not involved. Special Agent Gibson testified that he did have a conversation with Lanier pertaining to Lanier's wife and child while the search of Lanier's house was being conducted. Gibson told Lanier that it was not yet determined whether Lanier's wife would be arrested and they discussed the need for getting either family members or, if no one was available, Social Services, to look after the child.

Based on this record, we find that Lanier's statements were the product of an essentially free and unconstrained mind and not the product of coercion by which Lanier's will was overborne and his capacity for self-determination critically impaired. *See Goodwin*, 3 Va. App. at 253, 349 S.E.2d at 163-64. Therefore, we conclude that the trial court did not err in admitting the statements into evidence.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

Koontz, C.J., and Moon, J., concurred.