COURT OF APPEALS OF VIRGINIA


Present:    Judges Benton, Frank and Felton
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                          MEMORANDUM OPINION[*] BY
v.        Record No. 2018-04-4                         JUDGE ROBERT P. FRANK
                                                             FEBRUARY 8, 2005
DEBRA LESTO MEYERS


                  FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                            Jeffrey W. Parker, Judge

            Michael T. Judge, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General, on brief), for appellant.

            Matthew S. Kensky (MacDowell & Associates, on brief), for
            appellee.


        On appeal, pursuant to Code § 19.2-398, the Commonwealth argues the trial court erred in

suppressing certain of appellee's statements because appellee was not subject to "custodial

interrogation" and thus was not entitled to be advised of her rights pursuant to Miranda v. Arizona,

384 U.S. 436 (1966).  We agree and reverse the trial court's suppression of appellee's statements.

We remand the case for trial.

                                     BACKGROUND

        While investigating the theft of a stolen dog kennel, Detective W.R. Petracca of the

Fauquier County Sheriff's Office drove to Fenton Farms to speak with appellee.  Appellee indicated

she knew nothing of the theft, and Detective Petracca left.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

After arresting Michael Fillmore for the theft of the kennel, Detective Petracca returned to the farm later the same day driving an unmarked van. He was dressed in "civilian clothes" but displayed his badge of authority. He was armed, carrying his weapon in a holster.

When Detective Petracca arrived, appellee had just gotten out of her vehicle "up by the main house" of the farm. The detective asked appellee "if she would step into the van so [he] could speak with her." She characterized his voice as "very stern and agitated," and she viewed the detective's statement as an "order." She also knew he was a police officer and that he had already spoken to Michael Fillmore. The conversation, according to appellee, lasted thirty minutes. The detective testified it lasted fifteen minutes.

Appellee sat in the front seat of the van, and the detective sat in the driver's seat. Petracca testified he never touched appellee and that each closed their own doors. Appellee never attempted to leave the van, nor was she told she was under arrest. She was never restrained. The detective testified nothing prevented appellee from leaving the van.

The detective then asked appellee about her knowledge of the dog kennel. She denied any knowledge of the kennel, and Petracca said he did not believe her. As appellee spoke, the detective took notes. He told appellee that she and Fillmore could be "in trouble for this." Petracca did not give appellee her <u>Miranda</u> rights. Appellee did not recall if the detective said she was free to leave.

At the conclusion of the interview, appellee opened the van door and left. Appellee testified she was never told she was under arrest nor was she restrained. Appellee indicated she did not leave the van prior to the conclusion of the interview because "that would be disrespectful." Petracca was the only officer present.

As appellee left, the detective told her he would "get in touch with her in reference to what she had just told me . . . ." On cross-examination, the detective admitted appellee was a suspect, partly because Fillmore had implicated her.

In an opinion letter, the trial court made a number of factual findings:

> Detective Petracca observed Ms. Meyers' boyfriend Michael
> Fillmore, with the stolen property. He was placed under arrest and
> Detective Petracca returned to Ms. Meyers' property to question
> her further. According to the Defendant, the Detective directed her
> to get into his police vehicle, a mini-van and sit in the front seat to
> answer some questions. She stated he was "very stern and
> agitated."

> Detective Petracca testified that he "asked" her to enter the van.
> The questioning took between 15 and 30 minutes. The doors to the
> vehicle were closed. The Defendant was not placed under arrest,
> but she did not feel free to leave "out of respect to the officer."

> The Detective's badge of authority was visible, as was his gun.
> The Defendant was told she could be charged with a felony and
> that he didn't believe her previous story, but no other contents of
> the conversation were disclosed to the Court. At the conclusion of
> the questioning the Defendant exited the vehicle and the detective
> departed.

The trial court concluded:

> In the case at Bar, it is clear that the officer removed the
> Defendant from her familiar surroundings, ie., the barn, to the
> detective's police vehicle.[1] The Court finds that the "request" to
> go into the vehicle was in the nature of a command. There could
> have been no other reason for this request except to place the
> officer in a greater degree of control.

> While only one officer was present, he was present in a very
> confined space. The Defendant was not physically restrained, but
> the questioning - the second time that day - went on for an
> extended period. She clearly was the focus of the investigation and
> threatened with prosecution. She was summoned by the Detective
> in a stern and agitated manner. No evidence was presented as to
> her mental condition. She did concede that she had been arrested
> on other occasions, but it was not clear whether she had been
> advised of her rights previously.

> No evidence was presented to suggest she was told that she
> could leave or that the questioning was otherwise non-threatening.

___

[1] This finding is not supported by the record. The uncontroverted evidence was that
appellee had returned to the farm in her vehicle. She got out of her vehicle "up by the main
house . . . ." The interview took place on the farm property but not at the barn.

- 3 -

ANALYSIS

The issue is very narrow. Was appellee in "custody" for <u>Miranda</u> purposes?

> When a motion to suppress is reviewed on appeal, the burden is on the appellant to show that the ruling, when the evidence is considered in the light most favorable to the [prevailing party below], constituted reversible error. We review the trial court's findings of historical fact only for "clear error," but we review *de novo* the trial court's application of defined legal standards, such as "reasonable suspicion" and "custodial interrogation," to the particular facts of a case.

<u>Ford v. Commonwealth</u>, 28 Va. App. 249, 255, 503 S.E.2d 803, 805 (1998) (citations omitted).

"'[P]olice officers are not required to administer <u>Miranda</u> warnings to everyone whom they question,' and <u>Miranda</u> warnings are not required when the interviewee's freedom has not been so restricted as to render him or her 'in custody.'" <u>Harris v. Commonwealth</u>, 27 Va. App. 554, 564, 500 S.E.2d 257, 261-62 (1998) (citation omitted).

Custodial interrogation is not the equivalent of detention. A person may be detained by the police and interviewed without being in custodial detention.

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system, which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer <u>Miranda</u> warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. <u>Miranda</u> warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which <u>Miranda</u> by its terms was made applicable, and to which it is limited.

<u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977).

The nature of the custody as articulated in <u>Miranda</u> and its progeny, is whether there is a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal

- 4 -

arrest." Burket v. Commonwealth, 248 Va. 596, 605, 450 S.E.2d 124, 129 (1994) (citing

California v. Beheler, 463 U.S. 1121, 1125 (1983)).

> Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." The totality of the circumstances viewed from the viewpoint of a reasonable person in the suspect's position must be considered when determining whether the suspect is in custody when questioned. "It is only when a suspect's freedom of movement is curtailed to a degree associated with formal arrest that the suspect is entitled to the full protection of Miranda."

Taylor v. Commonwealth, 10 Va. App. 260, 267, 391 S.E.2d 592, 596 (1990) (citations omitted).

> Among the circumstances to be considered when making the determination of whether a suspect was "in custody" are (1) the manner in which the individual is summoned by the police, (2) the familiarity or neutrality of the surroundings, (3) the number of officers present, (4) the degree of physical restraint, (5) the duration and character of the interrogation, and (6) the extent to which the officers' beliefs concerning the potential culpability of the individual being questioned were manifested to the individual. No single factor is dispositive of the issue.

Harris, 27 Va. App. at 565, 500 S.E.2d at 262 (citations omitted).

However, no single factor alone may necessarily establish custody for Miranda purposes, and not all factors may be relevant in a given case. Wass v. Commonwealth, 5 Va. App. 27, 33, 359 S.E.2d 836, 839 (1987). Thus, our inquiry is whether, based on "all of the circumstances," a reasonable person in appellee's position would have understood that she was under arrest. See Cherry v. Commonwealth, 14 Va. App. 135, 140, 415 S.E.2d 242, 244-45 (1992).

The trial court found that the detective commanded appellee to enter the police van. The detective, being the only officer present, wore his badge of authority and had a gun holstered. The interview lasted between 15 and 30 minutes. He was "very stern and agitated." Appellee was the focus of the investigation and was "threatened with prosecution." On several occasions, the detective told appellee he did not believe her story.

The court further found that appellee was not placed under arrest nor was she physically restrained. The record also reflects that the detective, while not telling appellee she was free to go, never indicated she was not free to leave. Nothing prevented appellee from exiting the van at any time. In fact, when the interview concluded, appellee opened the passenger door and exited. Appellee testified she did not leave the van prior to the conclusion of the interview simply because "that would be disrespectful." Appellee indicated that the detective did not tell her he was charging her with an offense. Further, the detective never indicated he had an arrest warrant for her.

Interestingly, appellee never indicated she thought she was under arrest or that the detective would prevent her from leaving the van. She had ample opportunity to voluntarily leave if she chose to do so.

Based on the trial court's findings, appellee was clearly detained. Yet, a temporary detention for purposes of investigation, without more, does not necessarily render a person "in custody." See United States v. Brignoni-Ponce, 422 U.S. 873, 881-82 (1975); Dixon v. Commonwealth, 11 Va. App. 554, 556, 399 S.E.2d 831, 832-33 (1991); DePriest v. Commonwealth, 4 Va. App. 577, 587, 359 S.E.2d 540, 545 (1987).

"The Miranda warnings are not required merely because . . . the investigation has centered on the person being questioned." Kauffmann v. Commonwealth, 8 Va. App. 400, 404-05, 382 S.E.2d 279, 281 (1989) (citing Mathiason, 429 U.S. at 495). The fact that the investigation had become accusatory and focused upon a suspect is not necessarily determinative of custody. Wass, 5 Va. App. at 33, 359 S.E.2d at 839 (citing Smith v. Commonwealth, 219 Va. 455, 470, 248 S.E.2d 135, 144 (1978)). Further, the period of interrogation, 15-30 minutes, coupled with the other circumstances, does not convert an investigatory detention into a custodial interrogation. See Ramos v. Commonwealth, 30 Va. App. 365, 516 S.E.2d 737 (1999) (rejecting

- 6 -

appellant's suggestion that a twenty-one-minute detention, among other circumstances, creates custody).

Circumstances much harsher than the facts of this case have been held not to be custodial interrogation. In Lanier v. Commonwealth, 10 Va. App. 541, 394 S.E.2d 495 (1990), the suspect was called over to the police vehicle and voluntarily entered the backseat. The vehicle had no door handles in the backseat, thus preventing the suspect from voluntarily exiting. Nevertheless, the trial court held, and we agreed, that the suspect was not in custody when he made his statement while seated in the back of the police car. 10 Va. App. at 544, 394 S.E.2d at 503. In Commonwealth v. Milner, 13 Va. App. 556, 413 S.E.2d 352 (1992), police detained the suspect on a public street to hold the suspect for identification. Despite the police patting down the suspect, who was not free to leave, this Court held that the accused was not in custody because the "actions of the officer did not subject the defendant to a restraint on freedom of movement 'of the degree associated with a formal arrest.'" 13 Va. App. at 559, 413 S.E.2d at 354. In Novak v. Commonwealth, 20 Va. App. 373, 457 S.E.2d 402 (1995), a sixteen-year-old suspect, accompanied by his mother, voluntarily went to police headquarters for interviews. The police told the suspect that witnesses saw him at the crime scene and that his fingerprints were found on the victim's clothing. The sixteen year old had been advised he was not under arrest nor was he a suspect. Again the trial court determined that under all of the circumstances of that case, the accused was not in custody for purposes of administering Miranda warnings. 20 Va. App. at 385, 457 S.E.2d at 408.

Thus, though we defer to the trial court's findings of fact, we hold, as a matter of law, that appellee was not subject to a custodial interrogation. We reverse and remand for trial.

Reversed and remanded.

- 7 -

Benton, J., dissenting.

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Applying these principles, the Supreme Court has explained the following:

> "[I]n-custody interrogation[s]" . . . place "inherently compelling pressures" on the persons interrogated. 384 U.S., at 467. To safeguard the uncounseled individual's Fifth Amendment privilege against self-incrimination, the Miranda Court held, suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation. Id., at 444. The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Ibid.

Thompson v. Keohane, 516 U.S. 99, 107 (1995). In making the ultimate determination for Miranda purposes, we must conduct two discrete inquiries:

> [F]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve "the ultimate inquiry": "[was] there a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."

Thompson, 516 U.S. at 112 (footnote and citation omitted).

It bears repeating that when we apply these principles on appeal from a trial judge's ruling suppressing evidence, "[w]e view the evidence in the light most favorable to [the accused], the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48

- 8 -

(1991). Our review of the facts is not *de novo*, and certainly we do not view the evidence in the light most favorable to the Commonwealth.

Viewed in the proper light, the evidence proved that earlier in the day before the contested interrogation the detective came onto the farm where Meyers resided and questioned her and Michael Fillmore for forty-five minutes about stolen property. He questioned them together in a non-coercive environment "at the barn property which [they] rent." Meyers told the detective she did not know anything about the property and did not know where it was. After this questioning, the detective left the farm. Later, however, the detective arrested Fillmore and then returned to interrogate Meyers again.

The trial judge found and the evidence proved that when the detective returned he "command[ed]" Meyers to get into his vehicle. He did so with a "very stern and agitated" demeanor. In so doing, the detective effected a detention of Meyers. The evidence proved, however, much more than a Terry detention.

The judge found and the evidence proved that rather than detaining and interrogating Meyers outside, in the less coercive atmosphere of the farm grounds where she lived, the detective acted under color of his authority and ordered her to enter his vehicle. As the judge found, the detective did this for "no other reason . . . except to place the [detective] in a greater degree of control." In this confined space, the detective interrogated Meyers while displaying his badge of authority and weapon. He was wearing "the other uniform that [the detectives] wear" -- "a polo shirt . . . that indicated [he] was a sheriff" because it shows a badge "displayed on that polo shirt." He was armed with a gun on his hip, and he had a "police scanner radio" on during the entire interrogation. In other words, under color of his authority, the detective removed Meyers from her familiar surroundings to the unfamiliar and confined space that he controlled.

In view of the "very stern and agitated" demeanor the detective displayed, the trial judge could reasonably infer that the interrogation was coercive. Indeed, he found "[n]o evidence was presented . . . that the questioning was . . . non-threatening." These inferences and findings reasonably flow from proof of the detective's demeanor and proof that the detective began the interrogation by confronting Meyers and ascertaining that Meyers knew Fillmore had been arrested. The detective told her that he did not believe her earlier statements denying involvement in the theft and told her that he could arrest her for a felony. The detective "just continuously told [Meyers] he didn't believe [her]" when she again denied involvement in the theft. According to Meyers, the detective interrogated her for thirty minutes and "was very insistent about his questioning . . . [, indicating that] he did not believe [Meyers] . . . and that [she] could be in a lot of trouble." Thus, the record supports the trial judge's finding that the evidence proved Meyers "clearly was the focus of the investigation and threatened with prosecution."

Giving little deference to the facts as viewed favorably to Meyers and to the trial judge's findings, the majority relies upon several cases to support its conclusion that this was not custodial interrogation. This case bears no resemblance, however, to <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977), where the accused "came voluntarily to the police station and was immediately informed that he was not under arrest." For the same reason, it is different than <u>Novak v. Commonwealth</u>, 20 Va. App. 373, 385-86, 457 S.E.2d 402, 408 (1995) (holding that the accused "had twice voluntarily come to police headquarters for interviews" and "had been previously advised . . . he was neither under arrest nor a suspect"), and <u>Lanier v. Commonwealth</u>, 10 Va. App. 541, 555, 394 S.E.2d 495, 504 (1990) (holding that the accused "voluntarily" went to the police car and spoke to the officers). When an accused voluntarily offers himself for questioning, as in these cases, that circumstance alone is generally sufficient to establish that a

reasonable person in that position believed he was not in custody and was free to leave just as he had come -- voluntarily.

This case also bears no resemblance to Harris v. Commonwealth, 27 Va. App. 554, 500 S.E.2d 257 (1998), where this Court held that the accused, although detained, consented to a frisk and voluntarily displayed narcotics paraphernalia before the officer accused him of any offense. Id. at 566, 500 S.E.2d at 263. This Court also held that "[t]he nature of appellant's *public* encounter with the troopers in broad daylight was not so 'police dominated' that a reasonable person would have felt 'completely at the mercy of the police.'" Id. See also Commonwealth v. Milner, 13 Va. App. 556, 557, 413 S.E.2d 352, 353 (1992) (holding that a police officer's "investigatory detention . . . on a *public street* for the purpose of holding a suspect for identification does not, *without more*, place the suspect in custody within the meaning of Miranda").

The evidence in this case proved and the trial judge found that the detective commanded Meyers to enter his vehicle in a threatening manner, accusatorily interrogated her in that confined space, told her that she had earlier lied to the detective, and, as an aid to the interrogation, used the threat that she could be arrested for a felony. These circumstances conveyed to her, as they would to any reasonable person, that she was not free to leave and that the restraint upon her was equivalent to an arrest. The trial judge correctly applied the facts in this case using the factors we identified in Wass v. Commonwealth, 5 Va. App. 27, 359 S.E.2d 836 (1987).

> To determine whether a restraint is "custodial" for Miranda purposes, "a host of factors must be considered." United States v. Streijel, 781 F.2d 953, 961 (1st Cir. 1986). Among the factors that must be considered are whether a suspect is questioned in familiar or neutral surroundings, the number of police officers present, the degree of physical restraint, and the duration and character of the interrogation. Id. at 961 n.13 (citing 1 W. LaFave & J. Israel, Criminal Procedure § 6.6 (1984)). Whether or when probable

- 11 -

cause to arrest exists and when the suspect becomes the focus of the investigation are relevant factors to consider. <u>Alberti v. Estelle</u>, 524 F.2d 1265, 1267 (5th Cir. 1975), <u>cert</u>. <u>denied</u>, 426 U.S. 954 (1976). "[T]he language used by the officer to summon the individual, the extent to which he or she is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention and the degree of pressure applied to detain the individual" may be significant factors as well. <u>United States v. Bautista</u>, 684 F.2d 1286, 1292 (9th Cir. 1982) (quoting <u>United States v. Booth</u>, 669 F.2d 1231, 1235 (9th Cir. 1982)).

5 Va. App. at 32-33, 359 S.E.2d at 839.

In short, the evidence in the record proved that the pressure imposed by the detective in these coercive circumstances constituted custodial interrogation. It rose to the level where it was likely to "compe[l]" a reasonable person "to be a witness against himself" in violation of the protection afforded by the Fifth Amendment. U.S. Const. amend V. Thus, the evidence was sufficient to establish that the detective violated the principles of <u>Miranda</u> by interrogating Meyers without giving her the required warnings.

For these reasons, I would affirm the trial judge's ruling suppressing Meyers's statement. I therefore, dissent.