COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Malveaux and Frucci

JEFFERY NEWKIRK, SOMETIMES KNOWN AS
 JEFFREY NEWKIRK

MEMORANDUM OPINION[*]
v.      Record No. 2045-24-1                              PER CURIAM
                                                         FEBRUARY 17, 2026

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph C. Lindsey, Judge

(G. Anthony Yancey; Law Offices of G. Anthony Yancey, on brief),
for appellant.

(Jason S. Miyares,[1] Attorney General; J. Brady Hess, Assistant
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of the City of Norfolk convicted Jeffery

Newkirk of possession with intent to distribute a Schedule I or II narcotic.[2] Newkirk asserts that

the evidence was insufficient to prove he knowingly and intelligently possessed the drugs. For

the following reasons, we affirm the circuit court's judgment and remand to correct the clerical

error in the final order.[3]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] The final order reflects that the circuit court case number was CR240000047-00, but the indictment, conviction order, and notice of appeal reflect the circuit court case number as CR24000047-00. Thus, it appears that there was an extra "0" in the circuit court case number on the final order. We remand to the circuit court to correct the clerical error in the final order. *See* Code § 8.01-428(B).

[3] After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND[4]

Norfolk Police Officer Jackson stopped a "Honda Pilot or a CRV" that had been reported stolen and approached the driver, later identified as Newkirk. There was another individual in the passenger seat. Officer Jackson asked both men to step out of the vehicle, and he placed Newkirk in his police cruiser while other officers searched the stolen car. Officer Jackson testified that Newkirk "kept on wanting to talk to [him]" and ultimately stated, "[l]ook, you're going to find something in the vehicle." When Officer Jackson asked what they would find, Newkirk responded, "I'm not trying to be a snitch, . . . but you're going to find something in the glove box area." Officer Jackson alerted other officers on scene to the glove box area where they eventually found suspected narcotics. The drugs were not in plain view but just "behind the glove box."

Norfolk Police Officer Halapin performed the search. He testified that the glove box was "set up in a way that it runs on a rail system" and "[w]hen you open the latch, the glove box when it rolls out . . . [i]t goes in and out like a kitchen drawer." Officer Halapin pinched the sides of the rail "because it's just a piece of plastic," and pulled the glove box out. He found the narcotics in the space behind the glove box. In the vehicle's center console, in plain view, were "several empty baggies of a size that would be consistent with distributing a narcotic" and an electronic scale.

Norfolk Police Detective Lutrell responded to the scene and collected the suspected narcotics, the baggies, and the scale. He sent the substance to the Department of Forensic

---

[4] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

Science for analysis and later received a certificate of analysis confirming that the substance contained 26.41 grams of cocaine. Detective Lutrell qualified as an expert in narcotics distribution, packaging, and use. He testified that the quantity of cocaine, together with the baggies and the scale, were inconsistent with personal use. He added that the driver of the vehicle would be able to reach the glove compartment.

After the Commonwealth rested, Newkirk moved to strike the evidence arguing that there was no nexus between Newkirk and "the drugs that are hidden apparently behind the glove box out of sight, out of plain view beyond what he can see with regard to his knowledge." He argued, "[t]here's no other evidence to indicate that he actually knew what was there," and asserted that the evidence failed to prove the element of possession. The circuit court denied the motion to strike.

Newkirk's sister, Kimberly Brown, testified that her brother's friend "Poochie" usually drove the car and that on the day of the offense, he picked Newkirk up to go to a job interview. Brown testified that she "happened to come across the traffic stop" when she was returning from a doctor's appointment and saw the familiar vehicle.

Newkirk testified that he and "Poochie" knew each other because they were both in the same line of work. Newkirk explained that he needed to purchase a vehicle and that "Poochie" brought the Honda over for him to consider buying. He testified that he drove the car for the first time on the day of the traffic stop, when he and "Poochie" were on a "test drive." He stated they had been out driving for about 45 minutes and were on their way to Food Lion to "buy some chicken" before the traffic stop. Newkirk said that after he was stopped, he stepped out of the vehicle before Officer Jackson approached the car and that "Poochie" then locked the car from the inside and would not allow the officers access to the vehicle. Newkirk testified that as he sat in Officer Jackson's police vehicle, he could see through the windshield that "Poochie" was

"stuffing" something into the glove box and wondered what he was doing. After the officers got "Poochie" out of the car and spoke with him, they told Newkirk that he would be charged with "everything" related to the stolen vehicle, and that's when Newkirk told Officer Jackson that they needed to go back and "check that car again." Newkirk testified he did not know that there were illegal narcotics in the vehicle and upon a second query said that he was only in the Honda for about five minutes before it got stopped.

In rebuttal, Officer Jackson denied that Newkirk exited the vehicle of his own accord, nor did he recall that "Poochie" had locked the car doors.

In closing, Newkirk again argued that the evidence failed to prove he knowingly possessed the cocaine that was found behind the glove compartment and asked the circuit court to dismiss the indictment. The circuit court took the matter under advisement to review Newkirk's videotaped interrogation by police. When the parties returned for the court's ruling, Newkirk reiterated his assertion that the evidence failed to prove he possessed the narcotics. The circuit court replied that it had adjourned the proceeding because although Newkirk's version of the events was "incredible" and "strained common belief," the court wanted to "err on the side of caution" and watch the video.

The circuit court noted that while there was no objection in the prior proceeding to the video being introduced, Newkirk's "[c]ounsel . . . now . . . d[id] not want the [c]ourt to look at the video [and] [t]hat is fine." The circuit court opined that even without viewing the video "there was an abundant amount of evidence that spoke to [Newkirk's] guilt" and thus found the evidence sufficient to prove that Newkirk possessed the cocaine with the intent to distribute it. Newkirk appeals.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

On appeal, Newkirk argues that the evidence was insufficient to prove he possessed the cocaine located behind the glove compartment of the stolen Honda, but he does not claim that the evidence failed to prove an intent to distribute. Thus, the sole issue before us is whether the evidence presented at trial was sufficient to establish that Newkirk knowingly and intentionally possessed the contraband found in the car.

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"To convict an individual of possession of a controlled substance, 'the Commonwealth must prove that the defendant was aware of the presence and character of the drugs and that he intentionally and consciously possessed them.'" *Merritt v. Commonwealth*, 55 Va. App. 719, 733

(2010) (quoting *Castaneda v. Commonwealth*, 7 Va. App. 574, 583 (1989)).  Criminal drug possession "may be actual or constructive."  *Bagley v. Commonwealth*, 73 Va. App. 1, 27 (2021). "It may also be either sole or joint."  *Id.*  Constructive possession of drugs "can be shown by 'acts, statements, or conduct of the accused or other facts or circumstances which tend to show that [he] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'"  *Id.* (alteration in original) (quoting *Wilson v. Commonwealth*, 272 Va. 19, 27 (2006)).  "Furthermore, proof that a person is in close proximity to contraband is a relevant fact that, depending on the circumstances, may tend to show that, as an owner or occupant . . . of a vehicle, the person necessarily knows of the presence, nature and character of a substance that is found there."  *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992).

The evidence here, viewed in totality and considering all reasonable inferences arising from it, supported the circuit court's finding that Newkirk possessed the cocaine.  Newkirk was pulled over for driving a stolen vehicle bearing stolen tags.  "Poochie" was in the passenger seat.  While sitting in Officer Jackson's patrol vehicle waiting for the Honda to be searched, Newkirk, unsolicited, told Officer Jackson that the officers would find "something" in the vehicle and when Officer Jackson inquired as to what that "something" might be, Newkirk said, "I'm not trying to be a snitch,[5] but you're going to find something in the glove box area."  Thereafter, Officer Halapin recovered a large quantity of cocaine from behind the glove box.  Baggies and a digital scale commonly used for distributing narcotics were in the center console in plain view.  "Poochie" was a regular visitor to Newkirk's house and the two had on several occasions ridden around together, first in "Poochie's" red Cadillac and more recently in the Honda.  In other words, they were not strangers; they were associates.  And Detective Lutrell testified that the driver of the vehicle would

[5] To "snitch" means "to give *incriminating* evidence against someone, *esp. an associate*." *Webster's Third New International Dictionary* 2157 (1981) (emphases added).  We presume Newkirk understands the meanings of the words he uses.

- 6 -

be able to reach the glove compartment. A reasonable fact finder could easily conclude from these facts that Newkirk was aware of the presence and character of the cocaine and that it was subject to his dominion and control.

Newkirk's testimony to the contrary does not alter our analysis. Newkirk was impeached and his testimony was inconsistent on several key points. Indeed, although he initially stated that he was in the Honda for "[a] good 45 minutes," before he was stopped by police, he later claimed he was only in the vehicle for "[a]bout five minutes" before the traffic stop. On the day of the offense, he told his sister that he and "Poochie" were going on a job interview, but at trial he testified that they were on their way to the Food Lion to "buy some chicken." He also said this was a "test drive." His claim that he voluntarily exited the vehicle and could not get back in it because "Poochie" had locked the doors was inconsistent with Officer Jackson's testimony that Newkirk was removed from the car and was not locked out. Officer Halapin arrived right after the vehicle was stopped and observed both men exiting the Honda. And Newkirk admitted he was a convicted felon and had a misdemeanor conviction from having "stole[n] from . . . a Wal-Mart years ago."[6]

The circuit court believed the testimony of the Commonwealth's witnesses and rejected Newkirk's testimony. "'[P]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)). "The finding of the trial judge as to the credibility of witnesses and the weight to be given their testimony stands on the same footing as the verdict of a jury, and will not be disturbed unless it is plainly wrong or without evidence to support it." *Lanier v. Commonwealth*, 10 Va. App. 541, 549 (1990). Moreover, it is well-settled that "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the

_____

[6] "Virginia statutory provisions and common law allow the Commonwealth to impeach the credibility of a testifying criminal defendant by asking if he has been convicted of a felony or a misdemeanor involving moral turpitude." *Shifflett v. Commonwealth*, 289 Va. 10, 11 (2015).

accused and to conclude that the accused is lying to conceal his guilt." *Marable v. Commonwealth,* 27 Va. App. 505, 509-10 (1998).

Finally, "[b]y finding the defendant guilty . . . the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *James v. Commonwealth*, 53 Va. App. 671, 681 (2009) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). That conclusion "is itself a 'question of fact,' subject to deferential appellate review." *Id.* (quoting *Haskins*, 44 Va. App. at 9). Of course, a factfinder "cannot 'arbitrarily' choose, as between two equally plausible interpretations, one that incriminates the defendant." *Id.* at 681-82 (quoting *Haskins*, 44 Va. App. at 9). "The choice becomes arbitrary, however, only when 'no rational factfinder' could believe the incriminating inferences and disbelieve the exculpatory inferences." *Id.* at 682 (emphasis omitted) (quoting *Haskins*, 44 Va. App. at 9). In this case, the circuit court rejected Newkirk's assertion that he was framed by "Poochie" as "incredible" and found that his version of events "strained common belief." We accept that finding as we must since "[t]he sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)).

## CONCLUSION

The evidence presented at trial sufficiently established that Newkirk possessed the cocaine that was found behind the glove compartment in the Honda. Thus, we affirm his conviction and remand to correct the clerical error in the final order.

*Affirmed and remanded.*