**Alexandria**

RANDOLPH LEE DIXON

v.

COMMONWEALTH OF VIRGINIA

Nos. 0816-89-4

0850-89-4

Decided January 8, 1991

COUNSEL

Melvin T. Axilbund (Richard Rau; Barrett and Axilbund, on briefs), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General; Richard A. Conway, Assistant Attorney General, on brief), for appellee.

OPINION

**DUFF, J.**—Randolph Lee Dixon was convicted, in separate bench trials, of possession of cocaine and possession of a concealed weapon. He was sentenced to two years imprisonment with one year and six months suspended on the possession of cocaine conviction, and to a term of sixty days in jail on the possession of a concealed weapon conviction. His appeals from the convictions have been consolidated. Dixon argues that he was illegally detained, and that the search which discovered the cocaine and the weapon was illegal. We find no reversible error and affirm.

## I.

On October 29, 1988, at 10:45 p.m., Officers Pierce and Davis of the Fairfax County Police Department were dispatched to the Stonegate Apartments in response to a complaint about "two black males and a group of subjects arguing over a drug transaction." When the officers arrived on the scene they observed a group of black males standing in front of the apartment building. As the officers approached, the men disbursed, with some entering the apartment building.

Officer Pierce entered the building a few minutes later and observed the defendant walking down the stairs. Pierce testified that

the defendant was holding what appeared to be a "wad" of money in his hand, which he was attempting to stuff into his pants pocket while he was descending the stairs. When he reached the bottom of the stairs, Pierce asked Dixon for identification. Pierce then proceeded to pat-down the outer part of the defendant's clothing and discovered that Dixon was carrying a Raven .25 caliber automatic pistol. The defendant was then placed under arrest for carrying a concealed weapon, and Pierce proceeded to conduct a complete search of his person. This search led to the discovery of 0.23 grams of cocaine and a pipe.

Officer Pierce testified that he was personally familiar with the area, which he characterized as "an open air drug market." Pierce had worked in the area which included Stonegate Apartments for three years and had been involved in "numerous arrests in that particular area," which involved mostly "narcotics and weapon charges."

## II.

■ "[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information." *Hayes v. Florida*, 470 U.S. 811, 816 (1985). An officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity" after assessing the "totality of the circumstances." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).

We find that Officer Pierce reasonably responded to the totality of the circumstances in this case by detaining the defendant for further investigation. The defendant was observed in the same building where several of the suspects had previously entered; he appeared to be of the same age, gender and race as the suspects who had entered the building; Officer Pierce had been dispatched to this area on a drug investigation; and the defendant was observed stuffing "a wad of money" in his pants pocket as he descended the stairs. Under these circumstances, it was reasonable for the police officer to suspect that the defendant may have been involved in the criminal activity that the officer was investigating. Pierce was thus justified in detaining Dixon to question him briefly and to obtain additional information.

■ Dixon next argues that even if the stop was permissible under *Terry*, the pat-down search was not. We disagree. To justify a search for weapons an officer must be able to "point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Williams v. Commonwealth*, 4 Va. App. 53, 66-67, 354 S.E.2d 79, 86 (1987). Factors to be considered in determining whether a frisk was valid include "where the stop occurs, the time of the stop, whether late at night or not . . . and the character of the offense which the individual is suspected of committing." *Id.* at 67, 354 S.E.2d at 87.

We hold that under the circumstances of this case, a protective pat-down search for weapons was proper. The officer was present at the apartment complex to investigate a possible drug transaction; the defendant matched the description of the suspects involved in the transaction; the defendant was observed walking down the stairs of the same building where several of the suspects had entered earlier, stuffing a "wad" of money into his pocket; and the officer entered the building alone at a late hour of the night (approximately 11:00 p.m.). In addition, there was only one other officer at the scene and he was outside of the building where the defendant and Officer Pierce were located.

■ We find from these facts that the officer reasonably was justified in believing the defendant was armed and dangerous. Moreover, as we previously stated in *Williams*, the suspicion of narcotics possession and distribution gives rise to an inference of dangerousness. "It is not unreasonable to suspect that a dealer in narcotics might be armed." *United States v. Post*, 607 F.2d 847, 851 (9th Cir. 1979). Therefore, the protective pat-down for weapons was valid. "To hold otherwise would be an invitation to violence in what is always a potentially explosive situation." *Williams*, 4 Va. App. at 67, 354 S.E.2d at 87.

For the foregoing reasons, the conviction appealed from is

*Affirmed.*

Keenan, J., and Willis, J., concurred.