COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Elder and Bumgardner
Argued by teleconference


ANGELO LEWIS FORD
                                            OPINION BY
v.   Record No. 0119-97-2      JUDGE RUDOLPH BUMGARDNER, III
                                         SEPTEMBER 1, 1998
COMMONWEALTH OF VIRGINIA

              FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                      Herbert C. Gill, Jr., Judge

              D. Gregory Carr (Bowen, Bryant, Champlin &
              Carr, on brief), for appellant.

              Richard B. Smith, Assistant Attorney General
              (Richard Cullen, Attorney General, on brief),
              for appellee.


     Angelo Ford was convicted of grand larceny during a bench

trial.  The appellant contends the court erred by denying his

motion to suppress because:  (1) the stop was invalid; (2) the

appellant was subjected to custodial interrogation without being

given Miranda warnings; and (3) the show-up was unduly

suggestive.  In addition, the appellant alleges the trial court

erred in denying his motion challenging the sufficiency of the

evidence.  For the following reasons, we affirm the trial court's

decision.

     The evidence at the appellant's trial proved that, on

November 27, 1995, Detective J.A. Capocelli observed the

appellant walking with two women in the parking lot of the

Cloverleaf shopping mall.  The appellant was carrying a white

plastic bag.  As they approached a wooded area on the east side

of the lot, the appellant and the two women looked over their shoulders several times. The appellant then separated from the two women and entered a wooded area adjacent to the parking lot. Detective Capocelli lost sight of the appellant for the minute or two he was in the wooded area. The appellant then exited the woods without the white plastic bag and returned to the two women. The appellant and one of the women started walking toward the woods together but then turned back and joined the second woman. All three then walked into the mall.

After the appellant and the two women entered the mall, Detective Capocelli went into the wooded area and "after about ten seconds of searching, . . . found a white plastic bag hidden underneath two old mattresses that were disposed in the woods." The bag was similar in appearance to the one he had earlier seen the appellant carry into the wooded area. No other white bag was found. Inside the bag were five pieces of women's clothing that were "rolled up." The clothing had store tags indicating they came from a store named "Lane Bryant." There was no sales slip or receipt inside the bag. Detective Capocelli replaced the clothing and the bag in the wooded area and returned to his car.

About thirty to forty-five minutes after Detective Capocelli had seen the appellant and the two women enter the mall, the detective observed them exit the mall and walk east on Midlothian Turnpike. Detective Capocelli and three uniformed police officers, who had been informed of the detective's observations,

stopped the appellant and the two women by approaching them in vehicles with blue police lights activated. Detective Capocelli exited his vehicle and approached the appellant while two officers exited their cars and approached the two women. Detective Raymond Michael Louth attempted to ascertain whether the appellant had been in Lane Bryant that day.

Detective Capocelli asked the appellant for his name and any identification. The appellant provided neither. While most questions were geared toward identification, Detective Capocelli did ask the appellant if he could explain his actions in the parking lot. Early during the stop, the appellant denied being on the mall property, denied carrying a bag, and denied knowing the two females with him. Detective Capocelli testified at trial that the appellant was not free to leave and that he asked the appellant many questions more than once. The appellant was read his Miranda rights about thirty minutes after he was stopped. The appellant subsequently asked for an attorney.

Detective Louth, who had observed the appellant and the two women in the mall, retrieved the white bag from the woods after Detective Capocelli had told him where it was located. Detective Louth then took the clothing in the bag to Lane Bryant. He drove a store clerk to where Detective Capocelli was talking to the appellant, but the clerk did not recognize him. Detective Louth then transported another clerk, Nicole Dance El, to the scene of the appellant's stop. Although Ms. El had not previously given a

description of the appellant to Detective Louth, she told him that the people being detained had been in the store that day; she recognized a hat worn by one of the women. Ms. El recalled the appellant and the two women because they were one of only two customers she had assisted that day. She had noted nothing unusual about the appellant's behavior in the store.

Ms. El testified that when items are purchased from Lane Bryant, the store's practice is to have the cashier tear off the bottom half of the store tag. She also stated that the value of the clothing in the bag was between $340-$350.

## I. Motion to Suppress

When a motion to suppress is reviewed on appeal, the burden is on the appellant to show that the ruling, when the evidence is considered in the light most favorable to the Commonwealth, constituted reversible error. See Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980). We review the trial court's findings of historical fact only for "clear error," but we review de novo the trial court's application of defined legal standards, such as "reasonable suspicion" and "custodial interrogation," to the particular facts of a case. See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas v. United States, 517 U.S. 690, 700 (1996).

A police officer may stop and detain a person "for purposes of investigating possible criminal behavior even though there is

no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22 (1968); DePriest v. Commonwealth, 4 Va. App. 577, 585, 359 S.E.2d 540, 544-45 (1987), cert. denied, 488 U.S. 985 (1988). Investigative stops must be based on articulable facts supporting a reasonable suspicion that, based on the totality of circumstances, the suspect detained has committed or is about to commit a crime. See United States v. Cortez, 449 U.S. 411, 417-18 (1981); Leeth v. Commonwealth, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982) (a stop requires a less stringent test than probable cause); DePriest, 4 Va. App. at 584, 359 S.E.2d at 543. A trained and experienced police officer may be able to detect criminal behavior that might appear innocent to an untrained observer. See Cortez, 449 U.S. at 418; Taylor v. Commonwealth, 6 Va. App. 384, 388, 369 S.E.2d 423, 425 (1988).

We hold that Detective Capocelli had a reasonable, articulable suspicion that the appellant had committed a crime at the time he was stopped. The detective observed the appellant walking from the mall toward a wooded area while carrying a white plastic bag and looking over his shoulder several times. He then observed the appellant walk into a wooded area and emerge a few minutes later without the bag. The detective retrieved the bag moments later and discovered it contained what appeared to be stolen items of women's clothing. Based on these facts, Detective Capocelli could reasonably surmise that the appellant had engaged in criminal activity. See Cortez, 449 U.S. at

421-22.  In addition, the record established that the detective communicated this information to the other officers who assisted in the stop.  Detaining suspects expeditiously to avoid their possible flight or remaining at large promotes the government's interest in solving crimes and bringing offenders to justice, United States v. Hensley, 469 U.S. 221, 229 (1985), and in this case, Detective Capocelli and the other officers acted with dispatch.  As such, we cannot say that the trial court erred when it concluded that the investigative stop was valid.

Next we consider whether the appellant was in custody when questioned.  An investigative stop requires Miranda safeguards when, considering all factors, a suspect is "in custody."  See Wass v. Commonwealth, 5 Va. App. 27, 32, 359 S.E.2d 836, 839 (1987); Commonwealth v. Milner, 13 Va. App. 556, 558, 413 S.E.2d 352, 353 (1992) (citing Berkemer v. McCarty, 468 U.S. 420, 440 (1984)).  Whether a suspect is "in custody" under Miranda is determined by the circumstances of each case, and "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest."  California v. Beheler, 463 U.S. 1121, 1125 (1983) (citation omitted).  A temporary detention for purposes of investigation, without more, does not necessarily render a person "in custody."  See United States v. Brignoni-Ponce, 422 U.S. 873, 881-82 (1975); DePriest, 4 Va. App. at 587, 359 S.E.2d at 545; Dixon v. Commonwealth, 11 Va. App. 554, 556, 399 S.E.2d 831,

832–33 (1991).

In this case, the evidence supports the trial court's finding that the appellant was not in custody at the time his statements were made. The appellant was detained on a public street in the middle of the afternoon. Although he was not free to leave, he was not restrained, handcuffed, or searched. While four officers were present with police vehicles, there were three suspects, and one officer was ascertaining whether the appellant had been in the store. The appellant was not surrounded, and only Detective Capocelli asked him questions. Most of the questions were related to identification, and police may, within the scope of an investigative stop, ask a suspect to explain suspicious circumstances. See Brignoni-Ponce, 422 U.S. at 881–82. Detective Capocelli testified that he never told the appellant that he was being apprehended for alleged grand larceny. Under these circumstances, we cannot say that a reasonable person in the appellant's position would have believed that his encounter with the officers had escalated from an investigative detention to an arrest.

The thirty-minute detention before Miranda warnings were issued does not affect our decision.

> Much as a "bright line" rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.

\*       \*       \*       \*       \*       \*       \*

In assessing whether a detention is too

> long in duration to be justified as an
> investigative stop, we consider it
> appropriate to examine whether the police
> diligently pursued a means of investigation
> that was likely to confirm or dispel their
> suspicions quickly, during which time it was
> necessary to detain the defendant.

United States v. Sharpe, 470 U.S. 675, 685-86 (1985).  See

United States v. Alpert, 816 F.2d 958 (4th Cir. 1987)

(fifty-minute delay for obtaining narcotics dog is permissible);

Thomas v. Commonwealth, 16 Va. App. 851, 856-57, 434 S.E.2d 319,

322-23 (1993), aff'd, 18 Va. App. 454, 444 S.E.2d 275 (1994) (en

banc) (lawful to handcuff and transport suspect in police vehicle

to victim's house for identification); Burgess v. Commonwealth,

14 Va. App. 1018, 1022, 421 S.E.2d 664, 666 (1992) (forty-minute

detention in police vehicle is permissible where police are

determining whether car was stolen).

Here, the appellant was subjected to an investigative stop

for the purpose of determining whether he had been in the Lane

Bryant store.  The police saw him walking away from the mall and

acted quickly to detain him for investigative purposes.  As a

result of the stop, Detective Capocelli's suspicions were further

aroused.  The appellant made statements that contradicted the

detective's personal observations.  In addition, Detective Louth

recovered the white plastic bag from the wooded area and

determined that the clothing it contained had been stolen and

that the appellant had been in Lane Bryant earlier in the day.

The officers acted diligently and without unnecessary or

- 8 -

deliberate delay to effectuate the purpose of the stop. Thus, we conclude that the trial court properly denied the appellant's motion to suppress.

The appellant also contends the show-up was unduly suggestive and violated his due process rights. We disagree.

Pre-trial show-ups are not per se violative of constitutional rights. Reliability of the show-up is determined by considering the totality of circumstances. See Neil v. Biggers, 409 U.S. 188, 198-99 (1972); Yarborough v. Commonwealth, 15 Va. App. 638, 643, 426 S.E.2d 131, 134 (1993), rev'd on other grounds, 247 Va. 215, 441 S.E.2d 342 (1994). Courts should consider the opportunity of the witness to observe the suspect at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the suspect, the level of certainty demonstrated by the witness' confrontation, and the length of time between the crime and the confrontation. See Neil, 409 U.S. at 199-200.

In this case, the purpose of the identification was to determine whether the appellant had been in the store. The first store clerk did not recognize the appellant. Ms. El identified the appellant with certainty. She had observed the appellant in her store, recalled speaking with one of the women with him, and very little time had elapsed between her observation of them in the store and the confrontation. The show-up was conducted as expeditiously as possible. Based on these circumstances, we

conclude that the show-up was not impermissibly suggestive.

## II.  Motion to Strike

When an appeal challenges the sufficiency of the evidence, the evidence is viewed in the light most favorable to the Commonwealth, granting to it all reasonable inferences deducible therefrom.  A judgment will not be disturbed unless plainly wrong or unsupported by the evidence.  See Code § 8.01-680; Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975); Limonja v. Commonwealth, 8 Va. App. 532, 534, 383 S.E.2d 476, 477-78 (1989) (en banc), cert. denied, 495 U.S. 905 (1990).

A conviction will be affirmed when the circumstantial evidence excludes every reasonable hypothesis of innocence which flows from the evidence.  See Higginbotham, 216 Va. at 353, 218 S.E.2d at 537; Stamper v. Commonwealth, 220 Va. 260, 272, 257 S.E.2d 808, 817 (1979), cert. denied, 445 U.S. 972 (1980).

The appellant has suggested various inferences that could be drawn from the evidence which, he asserts, create a reasonable hypothesis of innocence.  He alleges the court erred in denying his motion to strike because:  (1) the larceny presumption that arises when one is in possession of recently stolen property does not apply because the property was found in the woods where several people had access; (2) the bag that was recovered was not necessarily the same bag that the appellant was seen carrying into the woods; (3) there was no evidence showing when the items

- 10 -

in the bag were stolen or when the appellant was in the store; (4) the Commonwealth did not negate the possibility that the items were sold and that the clerk forgot to remove the tags; and (5) the evidence was insufficient to prove the value for grand larceny.

We hold that the evidence presented at trial was sufficient to prove that appellant took five items of women's clothing worth more than $200 from Lane Bryant without the store's permission and with the intent to permanently deprive the store of possession of these goods. The record established that appellant was at Lane Bryant on the day of the theft. He was seen carrying a white plastic bag in the mall parking lot while glancing furtively over his shoulder. He entered a wooded area with the bag and returned to the parking lot a minute or two later without it. Detective Capocelli quickly retrieved the bag after the appellant re-entered the mall. No other white bag was located in the wooded area, and no other persons were observed there. The bag contained five articles of women's clothing from Lane Bryant but no sales receipt, and the store tags were still attached to the clothing. The record established that, when clothing is purchased from Lane Bryant, the store's practice is to tear off the bottom half of the store tag. Detective Louth took the clothing to the store and an employee valued the items at more than $300.

The fact finder considered and rejected the facts and

inferences presented by the appellant.  See Cook v. Commonwealth, 226 Va. 427, 432, 309 S.E.2d 325, 329 (1983).  In addition, the appellant's false statements to police constitute further evidence of his guilt.  See Walker v. Commonwealth, 25 Va. App. 50, 60, 486 S.E.2d 126, 131 (1997).  The evidence was sufficient to find the appellant guilty of grand larceny.  We find no error.

For the foregoing reasons, the trial court's decision is affirmed.

Affirmed.

Benton, J., dissenting.

A person "who has been detained . . . [by the police and is] thereafter . . . subjected to treatment that renders him 'in custody' for practical purposes, [is] entitled to the full panoply of protections prescribed by Miranda." Berkemer v. McCarty, 468 U.S. 420, 440 (1984). The detention becomes "custodial" for purposes of Miranda whenever the person has his or her "freedom of action . . . curtailed to a 'degree associated with formal arrest.'" Id. (citation omitted).

Furthermore, whether a person is "in custody" within the meaning of Miranda turns upon "how a reasonable [person] in the suspect's position would have understood his situation." Id. at 442. "Thus, a suspect is 'in custody' when the objective circumstances would lead a reasonable person to believe he was under arrest, thereby subjecting him or her to pressure impairing the free exercise of the privilege against self-incrimination." Cherry v. Commonwealth, 14 Va. App. 135, 140, 415 S.E.2d 242, 245 (1992). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 323 (1994).

> Among the factors that must be considered are whether a suspect is questioned in familiar or neutral surroundings, the number of police officers present, the degree of physical restraint, and the duration and character of the interrogation. Whether or when probable cause to arrest exists and when the suspect

– 13 –

becomes the focus of the investigation are relevant facts to consider. "[T]he language used by the officer to summon the individual, the extent to which he or she is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention and the degree of pressure applied to detain the individual" may be significant factors as well.

Wass v. Commonwealth, 5 Va. App. 27, 32-33, 359 S.E.2d 836, 839 (1987) (citations omitted).

When Angelo Ford left the shopping mall, he was stopped on the street by four police officers, three of whom were in uniform and armed with weapons. The officers arrived in four separate police vehicles with their blue emergency lights activated to effect the stop. The officer who detained and questioned Ford testified that Ford was not free to leave. Furthermore, the circumstances certainly proved that Ford was not free to terminate the encounter.

When the police initially stopped Ford, they did so based upon an officer's specific identification of Ford as the person who went into the wooded area behind the shopping mall and hid a bag containing items with intact store tags. Thus, when the officers detained Ford, the investigation had not only focused on Ford but had particularly identified the Lane Bryant clothing store as the place from which the items originated.

During the detention, Ford was questioned about his identity. After the officers questioned Ford about his identity, the officers then repeatedly questioned Ford for an "explanation

- 14 -

[of] the activity that [the officer] witnessed . . . inside the [mall's] parking lot."  Ford was questioned about those events for thirty minutes.  In addition to the extensive questioning, the police detained Ford to allow two store workers to be brought separately from Lane Bryant to view Ford.

Based on the length of the detention, the number of police officers involved, the nature and repetition of the questions being asked, and the fact that the investigation had focused on Ford, I would hold that the circumstances of the detention and questioning constituted a custodial interrogation.  The questioning of Ford was initiated before he was viewed by the store employees.  Furthermore, the questioning was designed at the outset to produce incriminating statements from the precise person whom the officer had seen engaging in conduct that the officer believed was criminal.  Only after Ford made statements in response to repeated questioning did the officers inform Ford of his <u>Miranda</u> rights.

The totality of the objective circumstances in this case would lead a reasonable person in Ford's position to believe he or she was under arrest.  <u>See</u> <u>Cherry</u>, 14 Va. App. at 139, 415 S.E.2d at 245.  The detention was not of a short duration but lasted thirty minutes.  A reasonable person in Ford's position would clearly have felt he or she was unable to leave and that he or she was, in fact, "in custody."  The only reasonable assumption to draw from this record is that if Ford had attempted

to leave, he would have been formally arrested.  This detention was the "functional equivalent of formal arrest," <u>Berkemer</u>, 468 U.S. at 442, and created a custodial situation requiring appropriate <u>Miranda</u> warnings.

A person in police custody "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney."  <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).  Statements made by an accused during custodial interrogation and without proper <u>Miranda</u> warnings are inadmissible as evidence.  <u>See</u> <u>Dean v. Commonwealth</u>, 209 Va. 666, 667–68, 166 S.E.2d 228, 230 (1969).

Because Ford was not warned of his <u>Miranda</u> rights prior to the questioning that led to his incriminating statements, I would hold that the statements were obtained in violation of Ford's Fifth Amendment rights and that all the evidence derived from his statements was tainted under the rule of <u>Wong Sun v. United States</u>, 371 U.S. 471, 488 (1963).  Because the statements and evidence should have been suppressed, I dissent.