COURT OF APPEALS OF VIRGINIA


Present:    Judge Frank, Senior Judge Willis and Retired Judge Fitzpatrick[*]
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                    MEMORANDUM OPINION[**] BY
v.        Record No. 3036-05-4                JUDGE JERE M. H. WILLIS, JR.
                                                          MAY 30, 2006
JAYANT KADIAN


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Kathleen H. MacKay, Judge

            Donald E. Jeffrey III, Assistant Attorney General (Robert F.
            McDonnell, Attorney General; Susan L. Parrish, Assistant Attorney
            General, on brief), for appellant.

            Peter D. Greenspun (Christie A. Leary; Greenspun, Davis & Leary,
            P.C., on brief), for appellee.


        Jayant Kadian was indicted by a Fairfax County grand jury for the March 24, 2005 murder

of his mother.  He moved to suppress statements he made to Fairfax County police on March 25,

2005.  Granting the motion to suppress, the trial court held that Kadian's questioning by the Fairfax

County police violated the ruling of the United States Supreme Court in Missouri v. Seibert, 542

U.S. 600 (2004) (plurality opinion).  The Commonwealth appealed this ruling pursuant to Code

§ 19.2-398(A)(2).  Because the trial court erred in granting the motion to suppress, we reverse that

ruling.

---

        [*] Retired Judge Fitzpatrick took part in the consideration of this case by designation
pursuant to Code § 17.1-400(D).

        [**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

FACTS

"In an appeal by the Commonwealth of an order of the trial court suppressing evidence, the evidence must be viewed in the light most favorable to the defendant . . . ." Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992).

On March 24, 2005, the dead body of Kadian's mother was discovered in the Fairfax County home where Kadian lived with his parents.[1] Police were alerted to "be on lookout" for Kadian so that the Fairfax County police could question him regarding his mother's death.

At about 10:00 the following morning, police officers found Kadian asleep inside a vehicle in a Harrisonburg parking deck. Officer Doyle Hess of the James Madison University (JMU) Police observed what appeared to be marijuana inside the vehicle. Hess obtained a warrant for Kadian's arrest for possessing marijuana. Kadian was taken into custody and transported to JMU police headquarters. There, Hess advised Kadian of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Asked whether he understood those rights, Kadian "nodded, as yes, he did understand."[2]

At the suppression hearing, Hess testified he was certain Kadian understood his Miranda rights. While being processed on the marijuana charge, Kadian had no difficulty communicating with the officers and providing them with biographical information. The police did not question him then about any crime.

Fairfax County Police Detectives David Allen and Robert Bond traveled to Harrisonburg, arriving at JMU police headquarters about midday on March 25, 2005. Hess told Allen and

---

[1] Court documents indicate Kadian was twenty years old at the time.

[2] Hess completed a "Miranda Warning" form memorializing his interaction with Kadian. At the bottom of the form, Hess wrote "nod 'yes'" beside the question, "Do you understand the rights that have been explained to you?" Hess noted on the form that the exchange occurred at 11:43 a.m.

Bond that Kadian had been arrested for possession of marijuana, had been advised of his Miranda rights, and had not requested an attorney.

Entering the room where Kadian was being detained, Allen and Bond introduced themselves. Allen asked Kadian, "Do you know why I'm here?" Kadian replied, "Yeah, because I stabbed my mom in the neck."

Allen asked Kadian if the officers who arrested him had advised him of his rights. Kadian said the officers had done so. Using a preprinted form, Allen advised Kadian of his rights under Miranda. Kadian placed his initials beside each item listed on the form. Kadian also signed the bottom of the form, acknowledging that he understood his rights, but wanted to waive them and make a statement.[3] Subsequently, Kadian answered the officers' questions and incriminated himself in killing his mother.

ANALYSIS

"Where an accused in a criminal case is subjected to custodial police interrogation, he first must be advised of his Fifth Amendment rights as defined in Miranda . . . for any statement he makes to be admissible in evidence." Commonwealth v. Thornton, 24 Va. App. 478, 488, 483 S.E.2d 487, 491 (1997).

> In order to protect the right granted by the Fifth
> Amendment that "[n]o person . . . shall be compelled in any
> criminal case to be a witness against himself," U.S. Const. amend.
> V, the Supreme Court in Miranda adopted prophylactic procedural
> rules that must be followed during custodial interrogations. See
> 384 U.S. at 444. The Court held that a suspect in custody "must be
> warned that he has a right to remain silent, that any statement he
> does make may be used as evidence against him, and that he has a
> right to the presence of an attorney, either retained or appointed."
> Id. In general, any statements elicited from a suspect in violation
> of these rules are inadmissible in the prosecution's case-in-chief.

---

[3] On the form, Allen indicated 12:49 as the time of the waiver.

> See Stansbury v. California, 511 U.S. 318, 322 (1994) (*per curiam*).

Burket v. Angelone, 208 F.3d 172, 196 (4th Cir. 2000).

Without dispute, Kadian was in police custody after the JMU police arrested him on the marijuana charge and transported him to police headquarters. See generally Ford v. Commonwealth, 28 Va. App. 249, 256, 503 S.E.2d 803, 806 (1998). Nor is it disputed that Hess advised Kadian of his Miranda rights, and Kadian acknowledged understanding of those rights.

The Commonwealth contends Kadian waived his Miranda rights when he chose to reply to Allen's initial question.[4] In North Carolina v. Butler, 441 U.S. 369, 373 (1979) (footnote omitted), the Supreme Court held that while

> [a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, [it] is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case. As was unequivocally said in Miranda, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

---

[4] Kadian contends Rule 5A:18 bars the Commonwealth from arguing on appeal that Kadian implicitly waived his Miranda rights. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. At oral argument the Commonwealth conceded that this position had merit. However the record supports neither the contention nor the concession. On appeal, "we are not bound by concessions of law by the parties." Epps v. Commonwealth, 47 Va. App. 687, 703, 626 S.E.2d 912, 919 (2006) (*en banc*). In its written "Response to Motion to Suppress" and in oral argument on that motion, the Commonwealth contended that Seibert did not control and that the police had advised Kadian of his Miranda rights before questioning. Thus, the issue of whether Hess issued Miranda warnings, and Kadian chose not to heed them, was laid before the trial court as a factual predicate to determination of the Seibert issue. Therefore, the Commonwealth's argument on appeal is not barred by Rule 5A:18.

See also Cheng v. Commonwealth, 240 Va. 26, 35, 393 S.E.2d 599, 604 (1990) (defendant's decision to talk to a police officer after having been advised of his Miranda rights constituted an implied waiver). "A defendant's 'subsequent willingness to answer questions after acknowledging [his] Miranda rights is sufficient to constitute an implied waiver.'" United States v. Frankson, 83 F.3d 79, 82 (4th Cir. 1996) (quoting United States v. Velasquez, 626 F.2d 314, 320 (3d Cir. 1980)).

Kadian was advised of his Miranda rights upon his arrest on the marijuana charge. Hess' testimony to that effect was corroborated by the "Miranda Warning" form he completed, noting on the form that Kadian nodded to indicate he understood his rights. Allen testified that, before the Fairfax County officers entered the room where Kadian was being detained, Hess told them that Kadian had been advised of his rights but had not requested an attorney. Kadian acknowledged to Allen that Hess had advised him of his rights. These facts and circumstances proved that Hess advised Kadian of his Miranda rights and that Kadian understood those rights. By choosing to respond to Allen's question, Kadian knowingly waived his right to remain silent.

A valid waiver of Miranda rights must be made voluntarily as well as intelligently. See Shell v. Commonwealth, 11 Va. App. 247, 255, 397 S.E.2d 673, 677 (1990).

> A defendant's waiver of his Miranda rights is valid only if the waiver is made knowingly, voluntarily and intelligently. Miranda, 384 U.S. at 475. Whether a statement is voluntary is ultimately a legal rather than factual question. See Miller v. Fenton, 474 U.S. 104, 110, 106 S. Ct. 445, 450 (1985). Subsidiary factual questions, however, are entitled to a presumption of correctness. Id. at 112, 106 S. Ct. at 451. The test to be applied in determining voluntariness is whether the statement is the "product of an essentially free and unconstrained choice by its maker," or whether the maker's will "has been overborne and his capacity for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). In determining whether a defendant's will has been overborne, courts look to "the totality of all the surrounding circumstances," id. at 226, including the defendant's background and experience and the conduct of the police, Correll v. Commonwealth, 232 Va. 454, 464, 352 S.E.2d

- 5 -

352, 357 (1987); Stockton [v. Commonwealth], 227 Va. [124,] 140, 314 S.E.2d [371,] 381 [(1984)].

Gray v. Commonwealth, 233 Va. 313, 324, 356 S.E.2d 157, 163 (1987), vacated on other grounds sub. nom. Gray v. Netherland, 518 U.S. 152 (1996).

The record contains no evidence of coercion by the police. While in custody on the marijuana charge, Kadian had no difficulty providing biographical information to the police. About an hour after Hess advised Kadian of his Miranda rights, Allen and Bond entered the room where Kadian was detained. Kadian's response to Allen's question occurred after a brief interaction, not as a product of extensive interrogation. Kadian was twenty years old. No disability or condition affected his ability to understand what was happening or to act voluntarily. Thus, the evidence proved Kadian's waiver, and subsequent statements to the police, were voluntary.

The trial court concluded Kadian's statement to the police was inadmissible because the procedure employed by the police was forbidden by the Supreme Court in Seibert.

> [I]n Seibert, the Court addressed the admissibility of statements obtained through a two-step police protocol: first, intentionally withholding Miranda warnings from a suspect, questioning the suspect until securing a confession; then obtaining a waiver of Miranda rights from the suspect and covering the same material using leading questions. See Seibert, [542 U.S. at 609-10] . . . . This tactic, termed "question-first," was designed "to render Miranda warnings ineffective by waiting for a particularly opportune time to give them, after the suspect has already confessed." Id. at [611]. Deeming it "absurd to think that mere recitation of the litany suffices to satisfy Miranda in every conceivable circumstance," a four-Justice plurality considered it "likely that if the interrogators employ the technique of withholding warnings until after interrogation succeeds in eliciting a confession, the warnings will be ineffective in preparing the suspect for successive interrogation, close in time and similar in content." Id. [at 611, 613.]

United States v. Mashburn, 406 F.3d 303, 307 (4th Cir. 2005).

The trial court's ruling required a finding that the police employed a deliberate procedure to extract a confession from Kadian without first affording him the benefit of <u>Miranda</u> warnings. The record does not support such a finding. Kadian was not questioned about any crime without having first been advised of his rights under <u>Miranda</u>.

The record contains no evidence of a deliberate two-step procedure designed by the police to circumvent the requirements of <u>Miranda</u> and extract a confession from Kadian. Rather, the record plainly shows that Kadian was properly advised of his <u>Miranda</u> rights and acknowledged understanding those rights before he was questioned. The trial court erroneously held that <u>Seibert</u> controlled and that Kadian's statements to the police should be suppressed.

CONCLUSION

Because the trial court erred in granting Kadian's motion to suppress his statements, we reverse the trial court's ruling and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>