COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Malveaux and Senior Judge Frank
Argued by teleconference

UNPUBLISHED

COMMONWEALTH OF VIRGINIA

v.       Record No. 0500-19-1

NICHOLAS CAPPS

MEMORANDUM OPINION[*] BY
JUDGE MARY BENNETT MALVEAUX
AUGUST 20, 2019

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Steven C. Frucci, Judge

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on briefs), for appellant.

Roger A. Whitus, Assistant Public Defender, for appellee.


Pursuant to Code § 19.2-398(A)(2), the Commonwealth appeals the trial court's pretrial

order granting Nicholas Capps' motion to suppress statements he made to police while intoxicated.

On appeal, the Commonwealth contends that the trial court erred in its determination that Capps'

statements to police were involuntary because police did not use coercive means to elicit his

confession.  For the following reasons, we conclude that the trial court erred in granting Capps'

motion to suppress and remand this case for further proceedings.[1]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Capps was indicted for petit larceny, third or subsequent offense, in violation of Code §§ 18.2-96 and -104, and charged by warrant for obstruction of justice, in violation of Code § 18.2-460(B), and public intoxication, in violation of Virginia Beach City Code § 23-22. Pursuant to Code § 19.2-398, the Court will review the Commonwealth's appeal of the pretrial suppression order only insofar as it pertains to the felony indictment for petit larceny, third or subsequent offense, in violation of Code §§ 18.2-96 and -104.

# I. BACKGROUND

Upon review of a trial court's decision to grant a motion to suppress, "[w]e view the evidence in a light most favorable to . . . the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." Commonwealth v. Grimstead, 12 Va. App. 1066, 1067 (1991).

On November 21, 2018, Detective Bradley Colas of the Virginia Beach Police Department was in a Walmart loss prevention office on an unrelated case. Colas was wearing street clothes with his badge on the right side of his belt next to his gun. A Walmart employee told Colas that a person was shoplifting, and Colas left the office to speak with Gary Wiggins, the store's loss prevention officer. Wiggins told the detective that "a guy had just run out of the store with some stolen items." Colas and Wiggins went to the parking lot where they saw Capps pulling a "boxed item" out of the driver's side of a Jeep. Wiggins identified Capps as the person who had left the store with stolen items. Colas then tried to take Capps into custody, but Capps "kind of pushed and ran past [Colas] into the adjacent parking lot." Colas ran after him, and when he reached the other parking lot, Capps "turned around," "squared up," and "raised his fist as if he was going to hit [Colas]." Capps did not actually punch the detective; instead, he ran away into another adjacent parking lot. Colas chased after Capps and attempted to place his hands into handcuffs, but Capps resisted and Colas was unable to restrain him. A citizen that was present helped Colas tackle Capps to the ground, and the detective was able at that point to place Capps in handcuffs. Capps later told the detective that he had not "tried to swing at" him. He also told Colas that he "became compliant after he saw the gun at [Colas'] side and realized that [Colas] was a law enforcement officer."

After placing Capps in handcuffs, Colas and other officers took Capps back to the Walmart parking lot. Capps stated he was injured, so medical personnel were called and arrived to treat him, and they determined that he did not need further medical assistance.[2]

Capps was placed in the back of a police car, and Colas read him his Miranda[3] rights from a preprinted card. As Colas read, Capps "kept saying, 'Yep. Yep. Yep.'" When Colas had finished reading the card, he asked Capps if he understood his rights. Capps "refused to acknowledge that he understood them," even after Colas asked him this question "repeatedly." Capps became upset with the detective when he heard Colas discussing with other officers an alert identifying Capps was a sex offender. Capps "kept referring to that rather than acknowledging that he understood his rights." Capps "would not say yes" when asked if he understood his rights, but "also didn't say no either."

When Colas had initially approached Capps, Colas noticed that Capps appeared angry and agitated but did not notice the smell of alcohol coming from Capps' person. As Capps ran from one parking lot to the next, he was "[n]ot exceptionally" staggering as he ran. However, when Colas read Capps his Miranda rights, he observed that Capps appeared to be "highly intoxicated" as indicated by his loud speech, belligerence, glassy eyes, and the alcoholic odor coming from him. Capps' speech at this time was loud but not "distinctively slurred."

Colas interviewed Capps while both were in the back seat of the police car. Colas asked Capps why he stole from the store, and Capps stated that he had "bills and a lot of children" and that he planned to sell the items "to have money for his kids for Christmas." He stated that he thought the value of the items was around $150. Capps admitted that he had "drank a little

---

[2] At this time, Colas heard Capps say to rescue personnel that "he had been stealing something." Capps moved to suppress this statement. The trial court held that the statement was admissible, and thus this issue is not subject to our review in this appeal.

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

alcohol that day," but said that he was "not really drunk . . . [j]ust a little buzzed." Capps also stated that he wanted to kill himself and intentionally hit his head against the glass divider in the patrol car.

Colas further questioned Capps after taking him to the jail. Capps told the detective that instead of scanning the items that he had stolen from the store, "he had scanned a pack of gum four times at the self-checkout register." He also stated "that he had actually paid $4 in cash for the gum and that he received a receipt for this."

Police found a 1.75-liter bottle of rum liquor in the Jeep where Capps was first seen in the Walmart parking lot. The bottle was "[m]ostly empty."

Capps was indicted for petit larceny, third or subsequent offense, in violation of Code §§ 18.2-96 and -104. Capps filed a motion to suppress his statements to police, arguing that they were inadmissible as they were obtained in violation of his Fifth and Fourteenth Amendment rights, in part because he made the statements at issue while intoxicated.

After hearing evidence at the suppression hearing, the trial court stated that it was "finding as a matter of fact based on [Colas's] testimony, he was very candid, that [Capps] was intoxicated." The court ordered further briefing on the issue of whether an individual could give a "knowing and intelligent waiver when they're intoxicated."

In supplemental briefing, Capps, citing Yarborough v. Commonwealth, 217 Va. 971 (1977), argued that he "was not acting rationally and knowingly at the time that he allegedly waived his rights to remain silent and to counsel" and thus his statements should be suppressed. In response, the Commonwealth argued that there was no indication from his behavior that Capps' intoxication limited his ability to waive his Miranda rights. The Commonwealth also alleged that there was no police coercion in this case, which it argued was a necessary predicate

- 4 -

to the finding that a confession was not "voluntary," citing Colorado v. Connelly, 479 U.S. 157 (1986), for this proposition.[4]

After supplemental briefing, the trial court held another suppression hearing where it granted Capps' motion to suppress his statements to Detective Colas. The court noted that Capps had "tried to fight . . . [and] to square up" with Colas and that such behavior did not "sound like someone who's rational, thinking with some intellect." The court also stated that it did not find that "the detective did anything wrong." However, the court found, "based on the totality of the circumstances including the squaring up with the . . . detective," that "these were not the actions of someone's who's rational and that the statements that he made were statements that were not made by someone who was rational with rational intellect or free will." Thus, the statements "were involuntary and inadmissible."

The Commonwealth now appeals the trial court's pretrial ruling.

## II. ANALYSIS

When a pretrial motion to suppress is reviewed on appeal, the burden is on the appellant, here the Commonwealth, to show that the ruling, when the evidence is considered in the light most favorable to the prevailing party below, constituted reversible error. Ford v. Commonwealth, 28 Va. App. 249, 255 (1998). In reviewing the trial court's ruling on a motion to suppress, "[w]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McCracken v. Commonwealth, 39 Va. App. 254, 258 (2002) (*en banc*) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*)).

---

[4] Before the trial court, both parties argued interchangeably about two separate but related Fifth Amendment issues—Capps' waiver of his Miranda rights and the voluntariness of his confession. We note that the trial court's ruling was limited to the voluntariness of Capps' statements, and thus address only that issue on appeal.

The Commonwealth argues that the trial court erred in suppressing Capps' statements because its conclusion that Capps' statements were made involuntarily was in error because there was no coercive police activity in this case, which is a necessary predicate to a finding that a confession was not voluntary.

While the Commonwealth presented this argument to the trial court, the court did not rule on whether an accused's confession can be considered involuntary in the absence of police coercion. Instead, the trial court relied exclusively on Yarborough v. Commonwealth, 217 Va. 971 (1977), a case which addressed voluntariness in the context of intoxication. In Yarborough, defendant argued that the trial court erred in admitting her statements to police because the evidence showed that she was "heavily intoxicated" when she was given Miranda warnings and then made inculpatory statements. Id. at 973. Our Supreme Court held that

> [s]tatements made during a custodial interrogation and while intoxicated are not per se involuntary or inadmissible. United States v. Brown, 535 F.2d 424, 427 (8th Cir. 1976). The test is whether, by reason of the intoxication, the defendant's "will was overborne" or whether the statements were the "product of a rational intellect and a free will." Townsend v. Sain, 372 U.S. 293, 307 (1963).

Id. at 974. Turning to the evidence, the Supreme Court held that the trial court's findings that defendant made knowing and intelligent waiver of her Miranda rights and that her statements were voluntary were not in error because "defendant's will was not 'overborne' and her statements were the 'product of a rational intellect and a free will.'" Id.

The issue raised by the Commonwealth in this appeal—whether coercive police activity is necessary for a finding that an accused's confession was involuntary—was not addressed in Yarborough. Yarborough itself is silent as to whether police coercion is a consideration in determining whether a confession was voluntary. However, an examination of subsequent case

- 6 -

law makes clear that coercive police activity must occur in order for a confession to be found involuntary.

Following our Supreme Court's decision in Yarborough, the United States Supreme Court decided Colorado v. Connelly, 479 U.S. 157 (1986). In Connelly, defendant approached a police officer and, "without any prompting, stated that he had murdered someone and wanted to talk about it." Id. at 160. Defendant was advised of his Miranda rights and made a full confession. Id. The next day, he stated that he had been instructed by voices to either confess or kill himself. Id. at 161. The trial court in that case suppressed the confession on the basis that it was not the product of a "rational intellect and 'free will.'" Id. at 162.

In reversing the trial court, the Supreme Court held that, with respect to due process concerns, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." Id. at 167. The Court reasoned that "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Id. at 164.

Post-Connelly, it is clear that some evidence of police coercion is necessary for our courts to determine that an accused's confession was involuntary, even in cases where an individual's mental state is weakened. See Commonwealth v. Peterson, 15 Va. App. 486, 488 (1992) ("The amount of coercion necessary to trigger the due process clause may be lower if the defendant's ability to withstand the coercion is reduced by intoxication, drugs, or pain, but *some* level of coercive police activity must occur before a statement or confession can be said to be involuntary."). While the facts and issue in Yarborough are similar to those in the instant case, Yarborough was decided before Connelly. Thus, Yarborough does not provide a complete

analysis of whether an accused's confession can be considered involuntary, and thus the trial court erred in relying on it exclusively.

Instead, the test for whether a confession can be considered voluntary is the same test found in Yarborough—whether an accused's "will was overborne" or the statements were the "product of a rational intellect and a free will"—with the additional requirement that there be some evidence of coercive police activity. "The test for voluntariness is whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'" Jenkins v. Commonwealth, 244 Va. 445, 453-54 (1992) (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961)). "When determining whether a defendant's will has been overborne, the totality of the circumstances must be examined, including the defendant's experience and background as well as the conduct of the police." Id. at 454.

On appeal, "[v]oluntariness is a question of law, subject to independent appellate review." Midkiff v. Commonwealth, 250 Va. 262, 268-69 (1995). This Court is bound, however, by "the trial court's subsidiary factual findings unless those findings are plainly wrong." Wilson v. Commonwealth, 13 Va. App. 549, 551 (1992). In addition, a "trial court's finding that [an accused's] will was not overborne is a factual finding, entitled on appeal to the same weight as a finding by a jury, and will not be disturbed unless plainly wrong." Bailey v. Commonwealth, 259 Va. 723, 746 (2000).

Applying the above-stated principles, we hold that the trial court erred in determining that Capps' statements were involuntary because the record shows that there was no police coercion that produced his statements. In the instant case, although Capps was "highly intoxicated" when Detective Colas read him his Miranda rights, there is no indication that the detective harmed or threatened to harm Capps if he did not subsequently answer the detective's questions. There is

also no indication that Detective Colas pressured Capps in any way to answer the questions posed to him or used deceptive or confusing questioning tactics. Rather, the record indicates that Colas read Capps his <u>Miranda</u> rights, and while Capps refused to acknowledge he understood them, he subsequently answered the detective's questions in the back seat of a police car and at the jail. Capps was able to clearly describe to the detective his method of stealing the items from Walmart, and there is no indication that this confession was the product of any coercion on the part of Colas. Here, there is no evidence in the record that Colas exploited Capps' intoxicated condition with coercive tactics. Further, the trial court itself stated in its ruling that it did not find that Detective Colas "did anything wrong."[5] Thus, because there was no action by police that coerced Capps' statements, we cannot consider his confession to have been involuntary.

## III. CONCLUSION

We conclude from the record on appeal that the trial court erred in its determination that Capps' statements were involuntary. Accordingly, we reverse the trial court's order granting the motion to suppress and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

---

[5] The Commonwealth asserts that we can resolve this appeal based upon the trial court's factual finding that Detective Colas did not do "anything wrong," as this finding precluded any conclusion that Capps' statements were involuntary. We note that the trial court's finding that the detective did not do "anything wrong" in this case is a factual finding that we view deferentially on appeal. However, because we conclude that the record as a whole demonstrates that police coercion did not lead to Capps' confession, we need not address this specific argument.